# EXHIBIT A

Superior Court Of The District Of Columbia

CIVIL DIVISION – Civil Actions Branch

500 Indiana Avenue, N.W., Suite 5000 Washington D.C. 20001

Telephone : (202) 879-1133 Website: www.dccourts.gov

```
FILED
CIVIL ACTIONS BRANCH
FEB 2 6 2020
Superior Court
of the District of Columbia
Washington, D.C.
```

Case No. ___2020   01378___

## COMPLAINT

Jurisdiction of this Court is founded on D.C. Code S. 11-921

**SARA GONZALEZ FLAVELL**          VS.          **REBECCA PATTERSON COLLIER**

PLAINTIFF                                                DEFENDANT

1207 ALPS DRIVE

                                                              708 CARNOUSTIE LANE,

MCLEAN                                              FORT WASHINGTON

                                                              MARYLAND 20744 - 7001

 VIRGINIA 22102

TEL.(703) 448 0213

                    **AND**

                                                            **REED GROUP**

                                                            DEFENDANT

                                                            CORPORATE HQ

                                                             10355 WESTMOOR DRIVE

                                                            WESTMINSTER, CO 80021

                                                             Tel. (303) 247-1860

1: Write a short and plain statement of your claim, including any relevant facts, dates, and locations:

**JURISDICTION AND VENUE:**

1. The DC Superior Court has jurisdiction over all causes of action/counts asserted.

2. That the Plaintiff worked at all relevant times in Washington D.C.

3. That the Defendant Collier worked on location at all relevant times in Washington D.C. and at all relevant times was an employee of Reed Group.

4. That the causes of action arose through the relationship created in Washington DC by the Defendants running as administrator the Disability Program of the Plaintiffs employer at the relevant times, which has its headquarters in Washington DC.

5. That the Defendant Collier was at all relevant times a registered nurse registered and practicing as such in Washington DC under a D.C. License Number RN 28896 and holding herself out as a registered nurse in charge of the Plaintiffs care and disability leave administration and monitoring and providing supervisory and administrative nurse practitioner care for the Defendant Reed Group as Disability Administrator under the Plaintiff's employer's Disability Program.

6. That at all relevant times Defendant Reed Group was doing business in Washington DC as a lawful legal entity and was providing Disability Program administration to the Plaintiff through its employee Defendant Collier in Washington DC. Defendant Reed Group held itself out as employing Defendant Collier in Washington DC and she held herself out as a Reed Group employee in Washington DC.

7. That at all relevant times Defendant Reed Group doing business as the Disability Administrator of the Plaintiffs employer's Disability Program employed and supervised Defendant Collier as a qualified registered nurse legally practicing in the District of Colombia to supervise case claims under the Disability Program and employed Defendant Collier as the nurse claims case practitioner in charge of managing the Plaintiffs case at the Plaintiffs employers headquarters office at 1818 H Street NW Washington DC and Defendant Collier was acting within the scope of her employment when the negligent acts resulting in injury, harm and loss to the Plaintiff occurred.

8. That the amount of this claim exceeds the jurisdictional minimum for the Superior Court which is the appropriate venue for this claim.

9. The Court has jurisdiction over the Defendants because the causes of action arose in the judicial district of the District of Columbia where the negligent actions took place.

   (A) the Defendant Reed Group as Disability Administrator was performing its role as Disability Administrator for the Plaintiff's employer in in the District of Columbia

   (B) the Defendant Collier worked in the District of Columbia for the Defendant Reed Group

   (C ) Defendant Reed Group was represented by its employee, the Defendant in the District of Columbia and

   (D) Defendant Reed Group is also vicariously liable for Defendant Colliers actions having held out as its employee Defendant Collier to administer the Plaintiff's Disability Leave in Washington DC.

10. The Plaintiff was employed in the District of Columbia and was at the relevant times and through her employment under her employer's Disability Program administered and managed by Defendant Reed Group administering it through Defendant Collier in the District of Columbia.

**PARTIES**

11.  Plaintiff, Sara Gonzalez Flavell was employed by the International Bank for Reconstruction and Development  at its headquarter offices located at 1818 H Street NW Washington DC at the material time of the events and throughout her  twenty-nine year employment  there, from 1988 until December 2017.

12. Defendant, Rebecca Collier, is a registered nurse who resides in Prince George's County, Maryland and whose place of work was situate at the  headquarters offices of the International Bank for Reconstruction and Development at 1818 H Street NW at the time of the actions giving rise to the Complaint  was working at this location in Washington DC as Reed Groups representative there, to handle and  the Bank's Disability Program matters for and on behalf of Defendant Reed Group in order to perform her functions as nurse case manager and administer and monitor the Plaintiff's  disability under the Disability Program.

13. Defendant, Reed Group, is a Colorado company with headquarters in Colorado which was at all relevant times the Disability Administrator of the Plaintiff's employer's Disability Program and which employed Defendant Collier to carry out functions of  supervision, record-keeping and monitoring participants under the Disability Program in Washington DC for the International Bank for Reconstruction and Development which engaged the Reed Group as an independent contractor to manage and run the Disability Program.

**FACTUAL ALLEGATIONS**

14. The Defendants administered the Plaintiff's employer's Disability Program at all relevant times.

15. The basic facts, more particularly outlined below, are that the Defendants, as the Disability Plan Administrators, misrepresented matters to the Plaintiff, failed to correctly explain the plan and failed to obtain consent before sharing the Plaintiffs medical and personal information and despite her objections continued to share her personal medical information in a manner which prejudiced her in her employers eyes and which violated her right to privacy. Throughout the running of the Plaintiff's participation in the Disability Program the Defendants committed multiple errors, including inadequate and insufficient record-keeping, failure to effectively monitor, misinformation, invasion of privacy, sharing of personal information without consent and generally mishandled and mismanaged the Plaintiffs disability leave causing her injury, anxiety and stress and financial loss. On March 16 2017  the Plaintiff's treating physician signed her Return to Work form ( a Defendant's pro-forma standard which the Defendants had expressly provided for that purpose) indicating the Plaintiff was fully recovered. The Plaintiff presented the form to the Defendants on March 17, 2017 and fully expected to return to work on Monday, March 19, 2017 as she was fully recovered and ready and able to return to work.  The Plaintiff presented at her workplace for work on March 19, 2017 only to be told by her supervisor that the Defendants were considering whether the Plaintiff could in fact return to work "safely".  At this point the Defendants, for whatever reasons (possibly to attempt to correct the Defendants own wrongful record-keeping and lack of authorizations since commencement)  refused to process the Plaintiff's return to work for a period of almost three months during which time the Defendants own headquarters staff inappropriately contacted the Plaintiff harassing her and stating she could not be released from the Disability Program unless further medical forms and information was provided, yet refusing to specify what further medical evidence was required. The Plaintiff was harassed, taunted, threatened with never being allowed to work again, and bullied by the Defendants  until the Defendants finally in June 2017  confirmed the Plaintiff's right to  return to work  and processed her return to work form (which had existed and been with the Defendants since March 17, 2017)  releasing her from the Disability Program. The Defendants did not release her retroactively as of her full recovery in March but instead claimed she had been validly on Disability Leave supported by medical evidence until June 7, 2017 so costing her almost three months of full salary. The Defendants actions /inactions caused  the Plaintiff pain and suffering, anxiety and fear and  loss of 30% of salary and opportunity to return

3

to work for three months which had a critical and adverse effect on the Plaintiff. Further the Defendants threats and misstatements that she might never be able to return to work ( despite the medical evidence that she was fully recovered) caused emotional stress and anxiety and mental anguish to the Plaintiff who was effectively held hostage by the Defendants in a program against her will, despite her objections, and in contradiction of all medical evidence and despite the Plaintiff not having made any claim or submitted any claim document to be included in the Disability Program for the time-period from March 19, 2017 to June 7, 2017. The Plaintiff had no disability and so was not eligible at that time. The Defendants caused the Plaintiff harm negligently, and or maliciously, knowing the adverse effect on the Plaintiff in terms of her well-being, her job and the financial cost to her of refusing to process her signed treating physicians return to work release of March 16, 2017 stating she was "fully recovered" ( using the Defendants standard pro-forma form) and so denying her rights. The Plaintiff's right to work was violated. Her civil and human rights were ignored.

The background facts are explained in more detail below:-

16. In May 2015 the Plaintiff became ill and was advised by her then employer to apply to the Defendant Reed Group as Disability Administrator to the Disability Program. Defendant Collier was at the relevant time employed by the Defendant Reed Group at the Plaintiff's employers location to provide "on site" administration of the Disability Program. Defendant Collier provided an information packet containing forms to the Plaintiff stating it contained all forms necessary and required by Defendant Reed Group for the Plaintiff to enter the Disability Program. On or about June 2, 2015 the Defendants informed the Plaintiff she had provided all necessary paperwork which had been approved and the Plaintiff was fully accepted into the Disability Program. The nurse practitioner assigned in charge of administering and monitoring her disability claim and leave was Defendant Collier.


17. Defendant Collier contacted the Plaintiff by phone after the Plaintiff had been notified of her acceptance into the Disability Program in June 2015. Defendant Collier asked for the Plaintiff's full medical history and history of her disability and illness and spoke for approximately 45 minutes to an hour. Defendant Collier stated she would be communicating with the Plaintiff at least monthly to discuss status and treatment and updates, and that she, Defendant Collier, would be in charge of all record-keeping and monitoring and supervision of treatment plan required by Defendant Reed Group for the Disability Program. The Plaintiff subsequently discovered in 2017 that the Defendants had failed at the critical time of acceptance into the Disability Program to provide all necessary documents to the Plaintiff or request the relevant completed forms before accepting her into the Disability Program which harmed the Plaintiff. In particular the Defendants had not sought the necessary consent from the Plaintiff to share her medical information, or informed the Plaintiff as to how this would be shared or with whom, and had not informed the Plaintiff that her medical information would be discussed with and disclosed to third parties in a cavalier and reckless manner without secure lines or encryption and not caring who might receive and see the Plaintiffs personal private medical information.


18. Defendant Collier during the first phone call and in writing several times, including from 2015 until 2017 informed the Plaintiff that in order to be on Disability Leave at any time and for each and every extension requested by the Plaintiff of Disability Leave a valid Statement of Claim ( on Defendant Reed Groups standard form) signed by the Plaintiffs treating physician was required to be submitted supporting an extension and attesting to the continuance and presence of her disability. Plaintiff was informed no Disability Leave could be approved without an operative Statement of Claim being provided to the Defendants for any period. Plaintiff was also informed that her Disability Leave would end at conclusion of her disability and when/if her treating physician signed the Defendants standard form entitled "Return to Work" form providing the medical evidence that the Plaintiff was fully recovered without work restrictions or limitations. A copy of the necessary Return

4

to Work form was provided to the Plaintiff for future use. Plaintiff relied on these statements by the Defendants to her detriment.

19. In administering the Plaintiff's participation in the Disability Program the Defendants acted negligently and recklessly and in their conduct to the Plaintiff through to June 2017. As an example: During her Disability Leave the Plaintiff was asked to attend an Independent Medical Exam with a Dr. Fischer in Washington DC. Plaintiff had asked Defendant Reed Group employees if other staff would be present at Dr. Fischer's offices and had been assured she would not be alone. On or about October 15 2015 Plaintiff arrived at Dr. Fischer's office to discover it was a self-contained poorly lit below ground basement residential apartment not in the main building and she was required to remain alone with Dr. Fischer for three hours. Dr. Fischer noted he had received the Plaintiff's full medical history and employment assessments and reports not shared with the Plaintiff and not authorized by her for disclosure. The Plaintiff had been informed that Dr. Fischer was board-certified. Dr. Fischer was not board -certified and had not been allowed to practice for two years. Dr. Fischer had been on probation and only recently had his license re-instated, a fact not disclosed to the Plaintiff when she had enquired of Defendant Reed Group about the examining doctor and his qualifications and recent experience for the conduct of an independent exam. The Defendants had not provided full disclosure to the Plaintiff on matters relating to her care and supervision.

20. During the first six months on her Disability Leave the Plaintiff became increasingly concerned that her medical information was being shared by the Defendants with other parties, including her employer, without her knowledge or consent. This became clear to the Plaintiff. Due to concerns the Plaintiff consulted another medical professional and as a result changed her Treating Physician in spring of 2016. The Defendants were notified and of the change in her treatment, but Defendant Collier expressed no interest in the Plaintiff's treatment and became increasingly distant. Defendant Collier missed several of the "monthly" follow-up monitoring discussions and the Plaintiff had to instigate the contact with Defendant Collier on more than one occasional and sent regular three-monthly Statements of Claim signed by her new Treating Physician to extend her Disability Leave, always in a timely manner. Defendant Collier's record-keeping became erratic, on one occasion she erroneously processed a Statement of Claim form for two months of approved Disability Leave instead of the three months indicated on the Statement of Claim form signed by the Plaintiff's Treating Physician. The Plaintiff asked if the Defendant wanted to contact her treating physician to discuss the period of extension but the Defendants informed the Plaintiff that it had just been the Defendant's error. The Plaintiff had to contact to have the matter corrected. The Plaintiffs records and forms were not being properly processed and maintained and she was not receiving support or monitoring from the Defendants to an appropriate standard despite the Defendants duty of care owed to the Plaintiff as Disability Administrator and at law as persons owing a duty of care and in accordance with the statements that had been made to her about the monitoring and supervision she could expect under the Disability Program.

21. On or about December 16, 2016 the Plaintiff called Defendant Collier as she had not heard from her, and informed Defendant Collier of the good diagnosis that the Plaintiff's treating physician expected she would be able to return to work shortly. Plaintiff out of caution was submitting the standard Statement of Claim form for a further three months but hoped to be back sooner. Defendant Collier informed Plaintiff that no further medical examinations would be necessary and assured her the Return to Work process was simple with just a Return to Work form signed by her treating physician as to her full recovery being necessary.

22. In January 2017 Defendants informed the Plaintiff she must attend an independent medical examination. Plaintiff asked for what purpose and was informed it had been advised by Defendant Collier and was to assess her for long-term disability. At no point had Defendant Collier spoken to, or raised concerns with, the Plaintiff's treating physician. The Disability Program stipulated long-term disability may be assessed after an absence on Disability Leave of twenty months, the Plaintiff had not yet completed twenty months and had informed the Defendants of her intended return to work and that her treating physician had indicated that it was likely that she would soon be determined "fully recovered" and no extension of her Disability Leave would be necessary. The Plaintiff contacted the Defendant Reed Group who confirmed that Defendant Collier's attempt to require an IME in January was incorrect and no independent medical examination would be necessary in January, however the Defendants mistake was detrimental to the Plaintiff as her employer was now informed that she was refusing to attend medical examination. The Defendants informed the Plaintiff that she must now ( in January) provide a Return to Work form even though she was on valid Disability Leave until March 17, 2017. This requirement was contrary to reasonable practice and the terms of the Disability Program, the Defendants should have made no such request of the Plaintiff. The Defendants were providing false information and not administering the Plaintiff's participation in the Disability Program to the standard of care required.


23. On March 16 2017 the Plaintiff's Treating Physician signed her Return to Work form to return to work as of Monday, March 19, 2017 without limitation or restriction certifying the Plaintiff as "fully recovered". The Plaintiff made no further claim for disability as she no longer suffered from any disability. On March 17, 2017 Plaintiff provided the form to the Defendants and expected to return to work on Monday March 19, 2017. However the Defendants failed to contact the Plaintiff at all or inform her of acceptance of the Return to Work form and that it confirmed her return to full-time work with her employer. The Plaintiff's employer informed her that she could not return to work until the Defendants informed Plaintiff's employer that she was recovered out of the Disability Program. It was for the Disability Administrator to make an assessment on whether the Plaintiff could return to work.


24. The Plaintiff repeatedly asked the Defendants to process her return to work form. The Defendants refused, now stating that the Plaintiff remained on disability leave under the Disability Program until the Plaintiff provided forms the Defendants had erred in not collecting at commencement and acceptance of the Plaintiff into the Disability Program in May/June 2015. The Defendants appeared to be attempting to correct their incorrect records and so excuse the wrongful acts the Defendants had been committing of sharing the Plaintiffs medical information without her consent, and often without her knowledge, with third parties including other doctors and her employer. The Defendants considered that this was because it may require further medical information. The Plaintiff repeatedly requested to know what further medical information was necessary. The Plaintiff offered to provide any further medical information if the Defendants could specify what information was required. The Defendants refused to specify any medical information or why it was necessary. The Defendants indicated the Plaintiff may never be able to return to any work. This was based on no medical evidence at all. The Defendants had been so indifferent as to the Plaintiff's treatment that it had never requested any documentation or medical treatment plan or status update from her treating physician and when the Plaintiff had offered to provide details to Defendant Collier she had been informed that would not be necessary.


25. The Plaintiff now met with her treating physician who advised that the Plaintiff undergo further testing with another independent testing doctor and then undergo a Fitness for Duty examination so that a Fitness for

Duty Report could be presented to her employer. The Plaintiff did undergo further medical testing and a Fitness for Duty examination at her own expense. The Plaintiff provided this on or about April 10, 2017.

26. Throughout April and May the Defendants continued to refuse to discharge the Plaintiff from the Disability Program where she was now captive against her will, without any medical evidence of any disability and without making a request or "claim" to remain in the Disability Program and without providing any Statement of Claim signed by a treating physician attesting to a disability, which she had been informed repeatedly by the Defendants was a pre-requisite to remain on disability leave. All medical evidence confirmed Plaintiff suffered from no disability at this time.

27. Between March 19, 2017 and June 7 , 2017 the Plaintiff contacted numerous employees of Defendant Reed Group and Defendant Collier. No assistance was provided. The terms and conditions of the Disability Program were not met and the Defendant Collier had not complied with any supervisory responsibility, not having been in contact with the Plaintiff communicating about her disability since the Plaintiff had contacted Defendant Collier in December 2016. Defendant Collier had failed in numerous of her nurse case practitioner obligations and in this manner harmed the Plaintiff. The Defendants actions/inactions caused the Plaintiff to be put in bad light with her employer. The Defendants made knowingly false statement and false medical record.

28. In June the Plaintiff's treating physician communicated with Defendant Collier stating that he wished to contact her to discuss the Plaintiff's previous illness and to explain her full recovery to the Defendants. The Defendant never communicated with the Plaintiff's treating physician and failed to return faxes, calls or notes. However on June 7, 2017 after further calls from the Plaintiff and email communications from the Plaintiff the Defendant Collier finally stated that the Plaintiff had been approved as out on Disability Leave until June 7, 2017 based on "supporting evidence", being medical evidence, and that on June 7, 2017 the Plaintiff was with effect from that date no longer under the Disability Program.

The Defendants had no right to unilaterally keep the Plaintiff under the Disability Program when it had evidence that she had no disability.

The Disability Administrator was bound to act on the Return to Work form of March 16, 2017 and process her return to work in accordance with its obligations and the duty of care it owed to the Plaintiff.

If the Plaintiff's employer had reservations on her return to work the Plaintiff's employer had the ability to require a fitness for duty examination, and the Plaintiff had already provided a Fitness for Duty report.

29. The Defendants acted wrongfully, recklessly, negligently and /or without any regard to the Plaintiff and the duty of care owed to her.

30. The Plaintiff had not had any disability and had made no claim to be under the Disability Program since advising that she could return to work effective March 19, 2017. The Defendants lied about the Plaintiffs medical condition for the period March 16 through June 7 2017. During this period the Defendants shared the Plaintiffs personal medical information with third parties and with her employer all the while noting it had no authority to do so. This placed the Plaintiff in bad light and caused loss of reputation. The Plaintiff's employer was informed the Plaintiff was not complying with the Disability Program. In point of fact it was the Defendant that had never correctly administered the Plaintiffs participation in the Disability Program and had shared, multiple times her personal information by unsecured means and unsecured connections, and had divulged confidential information to numerous third parties. And over unsecured internet connections. The Plaintiff

7

had repeatedly informed the Defendants that her personal medical information should not be shared without her consent and that it should cease its practice. The Plaintiff's employer was informed the Plaintiff had refused an independent medical examination (Paragraph 22 above).  In fact the Defendant Collier had erroneously arranged an Independent Medical Examination for long-term disability after the Plaintiff had called her in December 2016 stating her treating physician had indicated she could expect to be fully recovered early in the coming year ( 2017) when he would reevaluate her condition. Defendant Collier's action had been incorrect and not within the parameters of the Disability Program. Further Defendant Collier had been informed of the Plaintiff's expected full recovery in the next few months. Her actions were not within the healthcare providers responsibilities to advocate for the Plaintiff and care for her and to follow the treating physicians plan or discuss any concerns with the treating physician. The act was unreasonable and deviated from accepted medical standards and practices.

31 . The acts of negligence ( including medical negligence by Defendant Collier, a healthcare provider) deliberate deception, misrepresentation and violation of privacy occurred before as well as on or about March 17 2017 and continued through June 2017 during which period the Defendant refused to perform the obligations owed to the Plaintiff. Including to process the Defendants own Return to Work form and so denied the Plaintiff her ability to return to work and to full pay, resulting in financial loss to the Plaintiff.

32. Prior to the refusal to process the Plaintiffs return to work form in March 2017 and release her back to work which action the Defendant took only in June 2017, the Defendants committed significant negligence in administering the Plaintiffs Disability under the Disability Program. For Example: On or about January 2017 the Defendants then attempted to have the Plaintiff attend an IME for Long Term Disability against her will and outside the terms of the Disability Program ( Paragraphs 22 and 30 above) . The Defendants provided the Plaintiffs medical information to third parties without her knowledge or prior consent contrary to all acceptable medical and insurance practices. Further example: Defendant Collier who was charged as nurse case manager with supervising the Plaintiffs care and communicating with her monthly to assess her disability and eligibility under the program failed to communicate with the Plaintiff at all concerning any of her care after December 2016 when the Plaintiff had called the Defendant to update her. On that call the Defendant Collier laughed and made derogatory comments about the mental state of the Plaintiff and failed in her duty to treat the Plaintiff with dignity and respect. Defendant Collier negligently failed  to perform any further follow up as to the Plaintiffs medical condition, including failing to correspond or contact the Plaintiffs treating physician even though the Defendant had repeatedly contacted third parties previously, including the Plaintiffs previous Treating Physician during 2015 and part of 2016.

33.  Defendant Collier was negligent in her administration of oversight of the Plaintiffs disability claim. Record-keeping was incorrect and records missing, records were shared wrongfully without care or consideration of the harm caused to the Plaintiff , no regard was taken of DC applicable laws or to HIPAA requirements, which the Defendants acted in contravention of multiple times appearing not to know or understand the legal requirements. The Defendants owed the Plaintiff a duty of care and the Defendants actions fell well short of the requirements of a standard duty of care as practiced by other nurse case practitioners and other administrator's.

34. Defendant Collier, a registered nurse practicing as such in Washington DC at all relevant times,  holding herself out as responsible for supervision as the nurse case manager on the Plaintiffs Disability Leave under

the program ,committed significant mistakes and errors including from March 16 through June 7 2017 Including failing to keep adequate records and misrepresenting medical facts as supported by medical evidence.

35. The duty owed to the Plaintiff and standard of care applicable to the Defendants after receiving the Return to Work form on March 17, 2019 was to inform the Plaintiff of her return to work or to inform the Plaintiff of any further medical information necessary. Yet Defendant Collier never contacted the Plaintiff or returned her calls on the matter and failed to request any further Statement of Claim to extend the period of Disability without which the Plaintiff could not be allowed to continue on Disability Leave. Defendant Collier did nothing at all to communicate with the Plaintiff or process her return to work. In this she failed to adhere to the standard of care owed to the Plaintiff. Defendant Reed Group's other employees, not the Plaintiff's nurse case practitioner, now contacted the Plaintiff and made demands for other non-medical evidence which was never provided and was entirely unnecessary. In this the Defendant Reed Group allowed its employees to harass and molest the Plaintiff with no reasonable cause to do so.

36. As a direct result of the Defendants breaching the applicable standard of care owed to the Plaintiff as a beneficiary under the Disability Program by failing to correctly administer and supervise the program and keep correct records, and to inform the Plaintiff of her right to return to work and failing to process her return to work form as it was required to do, and failing to gather any further medical information ( if it considered any further medical information reasonably necessary) or inform the Plaintiff of what further medical evidence it required and by stating the Plaintiff continued on Disability Leave under the Program the Defendants breached the standard of care owed to the Plaintiff and acted negligently, recklessly and or maliciously. By failing to correctly carry out its duties under the Disability Program Defendant Collier breached the applicable standard of care owed to the Plaintiff , and breached medical care standards of a nurse in charge of the case which she had held herself out to be, and as a result of her failures to act on the Plaintiffs Return to Work form the Plaintiff suffered loss and injury.

37. In March 2017 the Plaintiff complained to Defendant Reed Group concerning the standard of care exercised by Defendant Collier and requested a different nurse case practitioner. Defendant Reed Group stated that the Plaintiff's care would remain with Defendant Collier. Defendant Reed Group was required to supervise management and administration of the Plaintiffs disability program requirements during the time Defendant Collier was providing medical review, recording, and effectively treatment oversight to the Plaintiff and at very least to ensure that Defendant Collier was correctly administering the Disability Program. The Disability Program obligations on Defendant Collier included liaising with the Plaintiff about her care, calling for monthly status discussions and ensuring that all necessary forms, including any form to extend the Disability Leave after it expired in March were provided to the Defendants. Defendant Collier failed in her duties and obligations and obtained no further forms and did not contact the Plaintiff from March through June to discuss her care. The Defendant Reed Group failed to adequately supervise Defendant Collier or at all, despite requests from the Plaintiff that it do so. In this Defendant Reed Group failed in the applicable standard of care owed to the Plaintiff. The Reed Group as Disability Administrator under the Disability Program which it stated the Plaintiff was under owed a duty to the Plaintiff to supervise the care and processing and communication and administration and management of the Plaintiffs disability leave that Defendant Collier was providing to the Plaintiff.

9

38. The Defendant Reed Group breached its standard of care by failing to adequately supervise Defendant Collier. This resulted in the failure to inform the Plaintiff and her employer of the Plaintiffs right to return to work as of March 19, 2017 and instead to leave the Plaintiff in limbo requesting to return to work and being informed that Defendant Collier had not acted upon the Return to Work form, being a signed medical treating physicians report that the Plaintiff was fully recovered, suffering no disability and able to return to work with full duties. Instead Defendant Collier determined the opposite, that the Plaintiff must continue on disability leave despite no disability, medical evidence of full recovery, and no Statement of Claim signed by the Plaintiffs Treating Physician requesting disability leave or supporting evidence to bolster any such Statement of Claim. This ran counter to the Disability Program requirements, was wrongful act by the Defendant Collier, known by Defendant Reed Group and adversely affected the Plaintiff who suffered financial damage as a result of the negligence and/or deliberate act as well as severe emotional distress, pain and suffering and public loss of light in the eyes of her employer.

39. On or about March 17, 2017 the Defendants were sent a duly completed  Return to Work form on the Defendants standard form, as provided to the Plaintiff by Defendant Collier, signed by her treating physician stating she was fully recovered and could resume all duties and work without any limitations or restrictions. The Defendants were now on notice of the Plaintiffs full recovery and right to return to work. The Defendants then refused to  process the Plaintiffs Return to Work form (the Defendants own standard form). Instead the Defendants now attempted to require further forms including a blanket authorization to provide her medical information to third parties which the Defendants had never had at any time during the Plaintiffs disability. The Plaintiff contacted the Defendants who refused to inform her that she could return to work for months. The Defendants now communicated with her employer who commenced communicating with the Plaintiff clearly obtaining information from the Defendants as to her personal medical information. This prejudiced the Plaintiff.

40. On June 7 2017 after the Plaintiff yet again contacted the Defendant Collier and her treating physician did the same, Defendant Collier now stated that the Plaintiff was on approved and medically supported Disability Leave until June 7, 2017 despite no medical evidence. Breaching the duty of care to administer the disability program in a reasonable manner and to an adequate standard of care. To state there was supporting evidence of a disability when Defendant Collier had evidence of the Plaintiffs full recovery since March 16, 2017 was false and negligent and a medical error.  In June, having failed to contact the Plaintiff Defendant Collier claimed the Plaintiff  was on  medically evidenced disability leave until June 7 despite no disability until that date  and so portrayed the Plaintiff as mentally ill during a period she suffered no disability and had provided evidence of fitness to return to work fully recovered as of March 16, 2017.

41. Defendant Collier also claimed to require evidence that she was not entitled to at law, insubordinate to the Treating Physician, and seeking to badger and molest the Plaintiff for a record which was never released to her and, which requirement proved false on the facts. Defendant Collier finally made her erroneous determination that Plaintiff had been on Disability Leave until June 7, 2017 supported by medical evidence supposedly reviewed by Defendant Collier. Yet no further medical evidence or records had ever been provided or released to Defendant Collier. And Defendant Collier breached her duty to act with care and on review of medical evidence provided and to the standard of care required of a nurse case practitioner in charge of the Plaintiffs previous disability claim which had ceased to be made or supported since March 16, 2017 on which date the

Plaintiff had been declared fully recovered and able to return to work without limitations or modifications of any kind. The Defendants acted unreasonably and negligently.

42. By these means through **deliberate malice** and or negligence the Defendants refused to discharge the Plaintiff and kept her hostage to the Disability Program, and therefore on a reduced pay by 30% of her salary for the period March 16, 2017 until June 7, 2017. On June 7 2017, the Defendants failed to contact the Plaintiff's treating physician or request from the Plaintiff any further medical evidence before stating she was under disability until June 7, 2017. The Plaintiff's employer was informed that the Plaintiff had been suffering from a disability , supported by medical evidence, until June 7, 2017. This action implied the Plaintiff had lied as to her medical condition to her employer when she had presented for work on March 19, 2017 stating she was fully recovered and able to work.

43. The Plaintiff had never claimed any disability pay for the period of March 16, 2017 to June 7, 2017 nor provided any evidence of any disability and had provided evidence of full recovery as of March 16, 2017.

The Defendants obstructed the Plaintiffs right to return to work.

44. As a result the Plaintiff suffered financial loss of 30 per cent of monthly salary from march 17 to June 7 ; suffered material loss of good light in the eyes of her employer which then contributed in turn to her employer failing to support her job search and so led to the Plaintiff being terminated in December 2017; and suffered mental pain and anguish and loss of reputation from the negligent acts of the Defendants.

**Count I : Negligence ( other than/in addition to the medical malpractice)**

45. The Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in Paragraphs 1 - 44 above.

46. That during all times alleged herein the Defendants were acting as if they had authority to treat the Plaintiff in the manner they so treated her, even after she had informed the Defendants repeatedly that it should cease and desist, that she did not apply to be in the Disability Program, had no disability which would qualify her to be in the Disability Program and had provided full evidence as required by the Defendant on its own form of her full recovery from her previous disability. The Defendant owed a duty of care to the Plaintiff not to act so negligently. The Defendants acted knowingly and without any due authority and against the Plaintiffs will which resulted in injury, including significant financial and reputational loss to the Plaintiff.

47. The Defendants were in breach of their duty of care owed to the Plaintiff arising (i) out of the Disability Program which the Defendants informed the Plaintiff it was administering and also (ii) arising at law as the Defendants held themselves out as in a position to treat the Plaintiff in this manner and engaged in a pattern of behavior and acted in a manner which they knew or ought to have known would be detrimental to the Plaintiff, the Defendants had a duty of care not to negligently harm the Plaintiff by their actions and inactions and statements and misstatements and in relationships with third parties, including the Plaintiff's employer.

48. Incorrect And Inadequate Record-Keeping. The handling of the Plaintiffs Disability Leave and medical documentation was inadequate and negligent, incorrect periods were communicated to the Plaintiff . The duty of care that should have been exercised to a reasonable standard was owed to the Plaintiff and the Defendants failed to meet the standard of care required. The Defendant Reed Group claims to be in the business of accurate

11

information management  Further the Plaintiff was suffering from a disability at the time  of some of the negligent acts and the Defendants  should have been diligent in complying with their duties and responsibilities.

The Defendants errors, failures, actions and inactions caused further stress and anxiety for the Plaintiff  so exacerbating her condition which the Defendants knew or should reasonably have known would be the case. The Plaintiff suffered emotional stress and financial loss and fear  as to whether she might ever work again as a result of the Defendants actions. The Defendants actions have had long-term lasting adverse effect.

49. The Defendants were negligent and made gross error in extending unilaterally and despite the Plaintiffs protests and objection her Disability Leave by a period of almost three months. The Defendants threatened that it would require further medical examinations and that the Plaintiff might never be able to return to work, when the Defendants had no right to make such statements  which caused severe anxiety to the Plaintiff, as the Defendants intended. The Defendants claimed falsely that the Plaintiff was continued on disability leave under the program they were administering, unsupported by any medical evidence and through their negligence and error and lack of adherence to any standard of care caused the Plaintiff personal injury as a result.

50. The Defendants owed the Plaintiff a duty of care at law not to act negligently and to the Plaintiffs detriment, and also having held out reasonable care to a satisfactory standard would be applied in administering the Plaintiffs Disability Leave under the Disability Program administered by the Defendants. Defendant Reed Group knew or ought reasonably to have known that its own actions, and the actions of its employees, including other employees in addition  to Defendant Collier ( who the Plaintiff called and contacted from March through June 2017 and before) would cause harm to the Plaintiff.  Defendant Reed Group owed a duty of care to the Plaintiff and breached its duty of care which it did not perform to the acceptable standard.

51. The Defendants knew or ought reasonably to have known that their actions and inactions and failure to act in accordance with the representations made to the Plaintiff would cause the Plaintiff harm. Defendant Collier failed to carry out her obligations under the Disability Program owed to the Plaintiff as a beneficiary and Defendant Collier had held herself out as responsible as the nurse case practitioner handing the Plaintiffs disability program. Defendant Reed Group failed to adequately supervise the administration and management of the disability program by Defendant Collier and failed to  intervene to assist the Plaintiff.

52 . The Defendants are responsible for the negligent acts and omissions and inactions and actions that they knew or should reasonably have known would, and did, harm and cause injury and damage to the Plaintiff.

53. Further, Defendant Reed Group made mistakes and errors in administering its Disability Program and in supervising Defendant Collier's management and administration which it informed the Plaintiff it would supervise and administer correctly and oversee and in this manner Defendant Reed Group harmed the Plaintiff.

**Count II : Medical Malpractice.**

54. The Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in Paragraphs 1 -44 above.

55. Throughout the period that the Plaintiff was under the Disability Program administered and carried out by the Defendants  the Defendant/s held Defendant Collier out as a  qualified nurse practitioner and healthcare professional who would comply with the standards of nurse's duty of care. Defendant Collier failed to carry out basic nursing obligations which she should reasonably have known should have been adhered to. Defendant

Collier at the outset represented to the Plaintiff that she, Defendant Collier, would carry out to an acceptable standard of care, a duty of care that Defendant Collier represented she owed to the Plaintiff. Defendant Collier claimed that she was a medical healthcare professional and held herself out as such, she discussed with the Plaintiff early on the Plaintiff's medical condition and treatment plan, she assured the Plaintiff that she would exercise every care and duty of a nursing professional. She contacted in 2015 the Plaintiff's then treating physician and informed the Plaintiff she was liaising with him and had worked with him before and would be sending to him her own forms. Her duties as a nurse include without limitation : commitment not to deliberately or recklessly cause personal injury and not to commit nursing malpractice. Defendant Collier failed to fulfill her duties in the manner that a competent nurse would in the same situation.

56. Defendant Colliers negligence included holding herself out as a nurse practitioner in charge of the Plaintiffs care and monitoring under the Disability Program, having represented that she would contact the Plaintiff at least monthly she had a duty to do so. Yet in much of 2016 and in every month of 2017 and in particular in the period from March through June 2017 when Defendant Collier claims the Plaintiff was suffering from a disability Defendant Collier failed to contact or call the Plaintiff for any medical status update or monitor her medical condition at all, she requested no medical evidence, and failed to contact the Plaintiff or her Treating Physician concerning the Plaintiffs medical condition or the Plaintiffs treatment or the Plaintiffs recovery. Defendant Collier failed to follow up to a reasonable standard of care or at all. In this she was grossly negligent. The negligence amounts to medical malpractice. She also failed to monitor and keep adequate records of the Plaintiff's disability and medical treatment. Defendant Collier, a healthcare provider, knew or ought to have known that her actions/inactions were wrong and without any sound medical basis and would harm the Plaintiff. Both during the period of March 17 through June 7 2017 and on June 7 2017 in making the erroneous and baseless decision ( and only communicating such decision retroactively in June) that the Plaintiff had been on Disability Leave after March 19, 2017 when the Plaintiff had no disability at all on the latest medical evidence . The Plaintiff was not eligible to be considered under the Disability Program after March 16, 2017 and the Defendants erred, negligently or deliberately and the Defendants actions had serious adverse consequences for the Plaintiff as they knew or ought reasonably to have known.

57. Defendant Collier's care as a nurse case practitioner holding herself out as qualified to review the Plaintiff's medical records deviated from accepted medical standards or practices. This deviation from standard medical practices and routine record-keeping and standards caused the Plaintiff injury and harm. The injury caused to the Plaintiff was foreseeable by Defendant Collier who knew the Plaintiff would suffer at very minimum the financial loss she sustained as a result. Further she made harassing and threatening comments and demands of the Plaintiff that she had no right to do, she used her position as nurse case practitioner to intimidate the Plaintiff and refuse her rightful return to work which adversely affected the Plaintiff's career. She had also laughed at the Plaintiff's concerns and jeered at her in December 2016.

58. Several situations in which Defendant Collier committed malpractice during the time she owed a duty of care to the Plaintiff include the following :-

(1) *Failing to Communicate* One of the primary duties of a nurse case practitioner is to monitor the medical condition. And communicate any concerns to the treating physician. Yet at critical times Defendant Collier refused to have any communication with Plaintiffs treating physician concerning Plaintiff's treatment and recovery. Defendant Collier failed to communicate with Plaintiff on an adequate regular basis concerning treatment. Defendant Collier never once contacted or communicated

13

with Dr. Rehman, the Plaintiffs treating physician from March 2016 onwards or any member of his staff.

As an assigned recording nurse Defendant Collier failed to notice Plaintiff's condition and recovery. This resulted in injury justifying a claim of nurse malpractice. Further, if Defendant Collier had concerns as to the Plaintiff's treatment or health or evidenced recovery she failed to communicate those concerns to the Plaintiffs treating physician, although she had a duty to do so.

*(2) Failing to Monitor and Assess the Situation*

Defendant Collier failed to monitor Plaintiff's health situation and make accurate assessments as to what was going on. There must be accuracy and timeliness when communicating with persons as appointed nurse case practitioner. A role Defendant Collier expressly stated to the Plaintiff she had taken on, without the Plaintiffs request. Defendant Collier had assured at the outset that she would communicate with Plaintiff about Plaintiff's condition throughout her Disability Leave. Defendant Collier was aware of the excessive prescriptions of the Plaintiffs previous treating physician Dr. Costell, and communicated with Dr. Costell When Dr. Rehman became Plaintiffs treating physician. Defendant Collier displayed a lack of interest in the Plaintiff's health or treatment other than to note that Statements of Claim were necessary to extend Disability Leave. Yet Plaintiff called Defendant Collier and reported on her condition and informed her that Dr. Rehman was now her treating physician. Defendant Collier asked for no further medical information at all.

*(3) Failing to Follow Accepted Standards of Care /Failure to Follow Standard Medical Protocol*

Under the Disability Program the Disability Administrator owes a duty of care. The standard of care for a nurse case practitioner is to ensure at very least adherence to the requirements of the Disability Program, Defendants failed to do so. Defendant Collier failed to follow standardized protocols, didn't follow a physician's written orders (treating physician's signed return to work form) and/ or didn't follow policies for adequate compliance with the Disability Program. Defendant Collier undermined Plaintiff's treating physicians' authority as the doctor in charge of the Plaintiff's treatment.

*(4) Failing to Advocate*

Acting as an advocate for a person under a nurse's care is a nurse's responsibility. Defendant Collier knew of Plaintiff's right to return to work but failed to advocate on Plaintiff's behalf. Defendant Collier knew Plaintiff was no longer suffering from any disability and had no right to be under the Disability Program. Defendant Collier owed a duty to advocate for Plaintiff's immediate return to work on receiving the Return to Work form dated March 16, 2017 placing no limitations or restrictions on Plaintiff's return. Defendant Collier failed to do so. She allowed harm to be done to the Plaintiff. Defendant Collier failed to return calls of Plaintiff's treating physician or act on his medical evidence and failed to inform what other medical information Defendant Collier considered she required. Yet Defendant Collier discussed the Plaintiff's care and disability status with the Plaintiff's employer while claiming she had no authorization to share information. The Defendants should have released the Plaintiff to her employer as she was not eligible to be under the Disability Program, the Plaintiff's employer could then have required medical information if it considered it necessary to do so.

14

*(5) Failing to Accurately Document /Medical Privacy Violation*

Defendant Collier owed a duty to keep a complete and accurate record. A nurse's record must accurately reflect the person whose record they are keepings history : medications, action plans, events, and responses to treatment.

Defendant Collier did not appropriately document events nor did Defendant Collier obtain necessary forms that Defendant Collier should have required at the correct and appropriate time. In March 2017 realizing her records were ill-kept and incomplete Defendant Collier wrongfully attempted to extract by duress forms she had never previously requested or required. And once the Plaintiff was no longer medically qualified to participate in the Disability Program. Possibly in an effort to cover up her mistakes and retroactively "amend" her faulty records. Plaintiff sustained injury as a result of Defendant Collier failure to keep accurate and required documentation. Defendant Collier insinuated and stated provision of the forms she now had no right to was a prerequisite for the Plaintiff's release from the Disability Program, this was incorrect and financial duress.

Throughout Plaintiff's participation in the Disability Program Defendant Collier failed to keep accurate and complete documents. Defendant Collier kept inadequate records. In March 2017 through June 2017 Defendant Collier resorted to making errors and producing false records. Defendant Collier failed to promptly process Plaintiff's Return to Work form when received in March 2017. Defendant Collier left it unprocessed for no proper or due cause for three months, meantime unlawfully applying duress on the Plaintiff. Defendant Collier provided incorrect medical information to Plaintiff's employer and caused distribution of Plaintiff's medical information to third parties. This was a violation of Plaintiff's right to medical privacy.

59. Failure to inform the Plaintiff/Patient of documents required, failure to keep Plaintiff accurately informed. The Defendant Collier failed to inform the Plaintiff correctly that the Defendant Reed Group had a standard authorization or that this was required at all. Defendant Collier informed the Plaintiff that her application for Disability Program consideration was fully and accurately documented without disclosing that a further form existed, nor did she provide any copy of that form to the Plaintiff. It is a healthcare provider nurse's and any competent claim management nurse case practitioner's duty to:

(a) *Know the organization's policies and procedures related to clinical practices and documentation.* Defendant Collier did not know or failed to adhere to Defendant Reed Group's standard forms for the Plaintiff's Disability Program when admitting the Plaintiff to the program, the Plaintiff only knew of this in March 2017 once she was informed that she must provide a standard form missing from her file which should have been on it since inception. Unfamiliarity with established policies and protocols is not a defense, especially when a clinician has acknowledged receiving education on such policies and protocols. Defendant Collier was negligent. This harmed the Plaintiff.

(b) *Maintain thorough, accurate and timely patient assessment and monitoring,* which are core nursing functions.

Defendant Collier failed in these fundamental obligations. This breached the standard of the duty of care owed to the Plaintiff. Defendant Collier harmed the Plaintiff by her medical negligence and failure to conform with the standard required of her as a healthcare practitioner and nurse.

60. Liability of Defendant Reed Group for Defendant Collier's medical negligence.

As to Defendant Reed Group, the Plaintiff re-alleges and incorporates by reference herein all of the allegations set forth above and re-states : that during all of the times alleged herein that the Plaintiff was receiving nurse case practitioner care and oversight and monitoring from Defendant Collier and that this Defendant was employed by Reed Group, which held itself out to the Plaintiff as employing Defendant Collier and informed the Plaintiff that Defendant Collier was her nurse case claims manager  in March  2017 despite the Plaintiffs complaint and objection in or about February through March 2017, and that Defendant Collier was acting within the scope of her employment and with the consent of Reed Group.

Defendant Collier's conduct amounted to professional medical misconduct.

61. That Defendant Reed Group is responsible for the breach of applicable medical care occasioned by its employees, including at all applicable and relevant times Defendant Collier, which resulted in injury and  loss to the Plaintiff.


62. The Defendants deviated from the acceptable standard of medical care during the nurse supervision and administration of the Disability Program of the Plaintiff on or about March 2017 and thereafter by Defendant Reed Group failing to properly supervise the care and treatment and administration being provided by Defendant Collier  to the Plaintiff and that this deviation was the direct and proximate cause of the injury and loss sustained by the Plaintiff and the direct and proximate cause of all the Plaintiffs injuries and damages.


63. Defendant Reed Group made mistakes and errors in administering/failing to administer its Disability Program and in supervising/failing to supervise, Defendant Collier. which it had a duty to the Plaintiff  to supervise and administer correctly, and oversee Defendant Collier. .In this manner Defendant Reed Group harmed, and allowed Defendant Collier to harm and cause injury to the Plaintiff.


**Count III : Misrepresentation.**


64. The Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in Paragraphs 1 -44 above.


65. Throughout the period that the Plaintiff was under the Disability Program administered and carried out by the Defendants the Defendants made false  representations, false statements, false promises as to procedures to be followed and direct misrepresentations to the Plaintiff. The Plaintiff relied on these misrepresentations, as the Defendants knew she would, to her detriment. The Plaintiff suffered harm and injury as a result.


66. Inter alia the Defendants misrepresented that the Plaintiffs  personal medical information would be treated with confidentiality, that the Defendants would follow and abide by all applicable laws, including district laws and regulations concerning care of and protection of her medical information stored by the Defendants, including without limitation that it would follow HIPAA rules. The Plaintiff had a right to expect that the Defendants would comply with all applicable laws and regulations governing the situation and her information.

67. The Defendants so misrepresented the manner in which the Disability Program would be run as to deceive the Plaintiff, for example the Defendants stated her medical information would not be shared without her consent, yet the Defendants mispresented the facts as despite not being authorized *at any time* to share the Plaintiffs medical information the Defendants did so many times and also distributed her information to third parties over the internet unsecured and unencrypted. The Plaintiff relied on the misrepresentations particularly

16

as the Defendant Reed Group is in the business of information management and storage and record-keeping, including of medical information and made representations that the Disability Program would be correctly and appropriately administered. The Defendants should comply with applicable standards and requirements. The Defendants owe a duty to the persons they provide services to do so competently and not deceive members of the public.

68. The Defendants stated that the correct procedures would be followed and that the Plaintiffs records would be promptly processed within a reasonable time and that all necessary forms would be correctly prepared and requested at the correct times during the running of the Plaintiffs disability under the Disability Program.

69. The Plaintiff was informed that her disability leave would be appropriately monitored and recorded and supervised by the nurse case practitioner Defendant Collier at the Plaintiffs employers headquarters.

70. The Defendants practiced deception and deceit on the Plaintiff.

71. Their actions were not as the Disability Program had been represented by the Defendants to the Plaintiff.

72. Representation by the Defendants, that the Disability Program was run in accordance with applicable legal requirements later transpired to be incorrect. For example: The Defendants had included in pre-requisite forms demanded from the Plaintiff (and provided) requirements that were unlawful and /or void under DC law, such as a non-specific sweeping consent not limited in time in an ambiguous form for sick leave.

73. Defendant Reed Group also made, through several of its employees, deliberate misrepresentations to the Plaintiff as to its rights and her obligations and that she would be put onto long term disability and attempted by these means to extract medical information and authorizations which it was not entitled to (and never did receive) through deception and duress. Its attempts harmed the Plaintiff. Its misrepresentations harmed, and sought to harm, the Plaintiff, as the Defendant Reed Group knew or ought reasonably to have foreseen.

74. The Defendants misrepresented the requirements and running of the Disability program, stating that the Plaintiff would no longer be under the Disability Program when her treating physicians signed return to Work form without limitations or restrictions confirming her full recovery was presented. The Defendants informed the Plaintiff many times that she could not be in the Disability Program unless the Plaintiff provided to the Defendants a Statement of Claim requesting extension of disability leave under the Disability Program signed by her treating physician evidencing that at the time requested she had a medical disability. Neither of these representations proved true as on the facts the Defendants informed the Plaintiff she must be regarded as having been in the Disability Program at a time she not only did not request disability leave, but provided no medical evidence of disability and had provided a complete signed Return to Work form evidencing her full recovery. The Plaintiff had no disability to make her eligible under the Disability Program yet the Defendants misrepresented and falsified records showing that she was under the Disability Program at a time she could not have qualified for it.

75. The Defendant represented that the Plaintiff was suffering from a disability and mental condition making her incapable of work at a time when the Plaintiff was repeatedly trying to return to work and presented herself to her employer to work. The Defendants knew or should have known that in this they were harming the Plaintiff who suffered as a result. Matters were misrepresented to the Plaintiff's employer who believed the Plaintiff was refusing lawfully requested independent medical examination.

76. Through these acts of the Defendants the Plaintiff suffered shame, distress, anxiety and pain and suffering and loss of 30% of her salary and was informed she might never be considered recovered.

77. The Defendants misrepresentations were relied on by the Plaintiff to her detriment. Further the Defendants misrepresentations were repeated to third parties and cast the Plaintiff in bad light with her employer, were wrongful, and caused the Plaintiff emotional distress. The Plaintiff had relied on the misrepresentations, as the Defendants knew would be the case, to her detriment. The Plaintiff suffered financial loss and injury as a result.

**Count IV :. NEGLIGENCE - Sharing Of Medical Information – Privacy Violation By Healthcare Provider And Defendants**

78. The Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in Paragraphs 1 -44 above.

79. The Defendants obtained medical information concerning the Plaintiff through the Disability Program administered by the Defendants. The Defendants had an obligation to comply with legal requirements concerning confidentiality and privacy of such information, how it could be recorded and maintained to whom, and how, it could be transmitted.

80. No medical information should have been shared with any third party without the Plaintiffs prior consent and written authorization to disclose such information to third parties, which was never requested during the period that the Plaintiff was suffering from a medically evidenced disability and never provided and released by the Plaintiff to the Defendants at any time before her final discharge from the Disability Program by the Defendants on June 7, 2017. The Defendants at no point during the whole of the Plaintiffs disability leave had any authorization to share the Plaintiffs confidential medical information. Yet the Defendants shared it with numerous third parties without the Plaintiffs knowledge or consent and may be continuing to do so.

81. Separately, the Defendants sent identifiable information, including the Plaintiffs medical records, by unsecured electronic files over the internet many times and the Plaintiff had to request that the Defendants cease and desist doing so. Defendant Reed Group employees only commenced encryption after the Plaintiffs several complaints. Her rights were violated many times by the Defendants actions.

82. The need for the Plaintiffs medical information to remain private and confidential when disclosed, and the Defendants duty of care to keep it confidential are well-established. Including being evidenced by the federal obligations under the Healthcare Insurance Portability Accountability Act, 1996 (HIPAA), which applied to the information. As such it sets the standard of care for protection of information. Lawsuits filed in state courts, have used, and can use, HIPAA standards to establish liability and lack of adequate duty of care.

83. The Plaintiff was owed protection and privacy of information which the Defendants violated under both the HIPAA Privacy Rule and HIPAA Security Rule. Reed Group's lack of understanding of the Plaintiffs legal right to privacy and the need for confidentiality were negligent and a breach of the Plaintiff's right to privacy. The more so since the Defendants claim to be in the business of managing information, including medical information. The standard of care was not met at all.

84. The negligent act of disclosure of personal confidential information to third parties, including the Plaintiffs employer amounted to failure to carry out the Defendants duties in handling the Plaintiffs disability management and caused the Plaintiff significant mental anguish, new unnecessary and considerable anxiety and stress and reputational harm. Her reputation in her workplace was adversely affected at a critical time in her career, as Defendant Collier had indicated.

### Count V : LOSS OF REPUTATION / and/ or DEFAMATION

85. The Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in Paragraphs 1 -44 above. Reed Group showed no accountability or concern for its obvious wrong-doing.

86. The Defendants knew their actions/inactions from March through June 7, 2017 may take a severe toll on the Plaintiff's health, and may well cause a mental relapse , particularly as the Defendants knew the Plaintiff's condition which was one of mental anxiety, trauma, and workplace-induced stress. The workplace-induced stress was a reasonable reaction as the Plaintiff had sustained physically and verbal and emotional assault over a period of time from the Senior Vice President to whom she directly reported. The Defendant knew or ought to have known that its negligence and /or misconduct could damage the Plaintiffs now recovered health and cause her to suffer anew the very condition from which she had recovered, which the Defendants now deliberately or negligently and recklessly attempted to exacerbate. The Defendant's indicated to the Plaintiff's employer that she may need an Independent Evaluation for long-term disability, with no medical evidence to support such statement.

87. In this manner the Defendants now obstructed the Plaintiff's employer's recognition of the Plaintiff's recovery and return to work.

88. But for the Defendant's negligent omission and conduct , and lack of respect for privacy of information, the Plaintiff would not have suffered loss of reputation in her workplace as she did, and would have been returned to work on her full salary on 19 March 2017, with a wholly different trajectory for her future career at her employer's institution and without loss of reputation.

89. Defendants Reed Group jeopardized the Plaintiff's job security and ensured her employer saw her in a different light (false light). The Plaintiff was never placed in another position at her employer institution and the Defendants knew this to be a reasonably foreseeable outcome as a consequence of the Defendants actions.

90. The Defendants failure to carry out its obligations as Disability Administrator to a reasonable accepted standard of care resulted in the Plaintiff suffering unnecessary damage. Further the Defendants wrongful insistence on unnecessary and unlawful documentation was not kept private by the Defendants. The Defendant Reed Group's employees disclosed medical records and the Defendants own incorrect and false assessment of the need for further medical authorizations to the Plaintiff's employer, contrary to the Defendants obligation to respect privacy of medical information. The Defendants now defamed the Plaintiff claiming she was refusing to attend medical examinations for long-term disability, whereas the Defendants knew well that the Plaintiff should be released from the Disability Program having provided all necessary evidence from her treating physician that she was fully recovered.

91. As a direct result the Plaintiff's employer formed views as to the Plaintiff's mental health which caused not only pain and suffering but ultimately loss of the Plaintiff's employment. In June 2017 the Plaintiff's

employer, after hearing the Defendant's defamation, would not assist the Plaintiff in finding a new position within the institution and claimed her previous position terminated during her absence. This was a result of the Defendants actions and inaction, defamation and lack of following a standard duty of care to a reasonable level of expertise. The Defendants could reasonably have foreseen how the Plaintiffs employer would react to its misstatements and falsehoods as to the Plaintiffs condition and the pretense need for further medical evidence. It is clear that the Defendants knew no further medical evidence was necessary or could be requested as it finally returned the Plaintiff to work out of the Disability Program on June 7, 2017 without any further medical evidence other than that of her treating physician, yet injury to the Plaintiffs reputation was done.

92. The Plaintiff suffered emotional pain and destress resulting from the defamation. The Plaintiff suffered loss of reputation. The Defendants informed the Plaintiff's employer that it had a right to an authorization and portrayed the Plaintiff as unreasonable, and by clear implication not a trustworthy and potentially not a good employee or possibly not recovered to full health. This was negligent and errant. It adversely affected the Plaintiff and caused her damage and injury including loss of employment.

93. The Defendants through its actions/inactions jeopardized the Plaintiff's job security and ensured her employer saw her in a different light (false light). The loss of 30% salary alone for the time period the Defendants refused to process the Plaintiff's return to work form cost the Plaintiff financial damage of over $10,000. Had the Defendants not made such false representations as to the Plaintiff having to remain, against her will or request, under the Disability Program the Plaintiff had every expectation that her employer would have assisted her with finding a position on her return to work. The Defendants actions caused the Plaintiff's employer to fail to carry out its own obligations owed to the Plaintiff.

94. The Defendants failure to carry out their duty of care to a reasonable accepted standard of care resulted in the Plaintiff suffering unnecessary damage to her reputation and injury to her career and work life from which she has never recovered.

95. As a direct result of the Defendants defamatory statements in the period March through June 2017 the Plaintiff's employer formed views as to her mental health which caused not only pain and suffering but ultimately loss of the Plaintiff's employment. This was a result of the Defendants actions and inaction and lack of following a standard duty of care to a reasonable level of expertise.

96. The Plaintiff suffered emotional pain and destress. The Plaintiff suffered loss of reputation. The Defendants informed the Plaintiff's employer that it had a right to require further medical evidence without specificity and portrayed the Plaintiff as unreasonable, and possibly not recovered to full health. The Defendants made these statements not caring whether these were true or false. The Defendants harmed the Plaintiff and failed in its duty of care not to make false statements and defame the Plaintiff. . As a result she suffered life-altering injuries because of a preventable mistake, and or deliberate action/inaction on the part of each of the Defendants. The Plaintiff's 29 year career at her employer ended and she has not worked since.

**INJURY** resulting from the Defendants acts as set out in Counts I through V above :

97. That as a direct and proximate breach of the applicable standard of care by the Defendants, the actions and inactions of the Defendants, the negligence, false record-keeping, defamation, misrepresentations and violation of privacy and mischaracterization of the Plaintiff by the Defendants, the Plaintiff has suffered harm.

98. These harms include that the Plaintiff

(1) incurred medical expenses in order to meet with treating physician to discuss situation, to undergo further medical testing which should not have been necessary in an attempt to have the Defendants now carry out and perform the obligations and duty of care owed to the Plaintiff and to attempt to right the wrong done to her reputation through the Defendants misrepresentations and defamation

(2) suffered mental pain and emotional sorrow and anguish

(3) suffered financial loss of 30% of salary had Plaintiff been correctly returned to work from March 17 through June 7, 2017

(4) was required to undergo additional medical procedures and sustain further damages in order to provide a Fitness for Duty exam for Plaintiff's employer due to Defendants failure to carry out its duty of care to the correct standard of disability administrator's and nurse case practitioner under Disability Program; and

(5) suffered loss of reputation and loss of light in employers eyes with adverse effect on Plaintiffs career and loss of career assistance from employer

(6) and has sustained other damages, including with long-term effect

All due to false and negligent handling and administration by Defendants of Plaintiffs Disability Program contrary to the Disability Program provisions, contrary to earlier practice and established pattern by Defendants in handling the Plaintiff's Disability Leave since 2015 and/or contrary to the terms of the Disability Program and reasonable standard of care owed to the Plaintiff.

The Defendants had held themselves out and misrepresented the manner in which it would treat the Plaintiff and her disability claim under the Defendants administration of the Plaintiff's employer's Disability Program, had failed to acquire necessary information from the Plaintiff, failed to act to the standard of care owed, acted negligently and made false statements about the Plaintiff which affected her adversely and caused her loss.


99. The Defendant Reed Group is responsible for the breach of applicable care occasioned by their employees, including, but not limited to, the Defendant Collier herein, which resulted in injury and loss to the Plaintiff.


2. What relief are you requesting from the Court? Include any request for money damages.


**CLAIM FOR DAMAGES**

100. The Plaintiff claims monetary damages against the Defendants Collier and Defendant Reed Group in an amount to be determined at trial, plus costs, and for any further relief that this Superior Court deems necessary and appropriate and without limitation is requesting the Honorable Court to rule that the Defendants must now compensate the Plaintiff for the injuries she incurred as a result of the negligent running of the Disability Program and the gross errors made and lack of carrying out duties owed to the Plaintiff to a competent and /or reasonable standard. And for the misrepresentations to her and the gross errors and mistakes, negligence and medical malpractice and false statements which put her in bad light and affected Plaintiff's reputation and thereby her career. The Plaintiff was owed a duty of care and the Defendants breached that duty of care and

as a result the Plaintiff suffered financial and other damages and must be compensated for the Defendants reckless behavior which harmed her. The Defendants harmed the Plaintiff through failure in record-keeping, breach of confidentiality of personal medical information entrusted to the Defendants, inadequate actions/inactions and through the Defendants reckless misrepresentations and defamation which they knew or should reasonably have foreseen would harm the Plaintiff.

101. As a direct and proximate result of the Defendants Collier and Defendant Reed Group and its employees and their acts and omissions the Plaintiff has suffered damages including, but not limited to:

- medical costs for the damage to my psychological wellbeing caused by Reed Group's actions
- Emotional distress and mental anguish and pain which required separate medical appointments
- Cost of medical testing and fitness for duty examination taken due to Reed Group's refusal to act upon my duly returned Return To Work form
- Lost wages ( 30 % of my salary throughout the period of 19 March 2017 through 7 June 2017) and the effect the Defendants actions had on my career and my employment
- Pain and suffering

102. Economic Loss: Plaintiff's monthly salary was a net amount of $14,250 in 2017. However through the actions/inactions of the Defendants the Plaintiff failed to receive an amount equivalent to 30% of her due salary from 17 March 2017 through 7 June 2017, yet with no reduction in deductions from salary for numerous expenses and employer deductions. This financial loss was because the Defendants failed /refused to release Plaintiff from the Disability Program on the correct date of March 17, 2017 and therefore Plaintiff received instead of Plaintiff's due salary a decreased and lesser Disability Pay at 30% less until the Defendants finally released the Plaintiff from the Disability Program it administered on June 7, 2017.

The financial cost to Plaintiff in loss of salary over the period from 17 March through 7 June 2017 was $11,205 and the financial cost greater as reductions were made in full. The Honorable Court is asked to order the Defendants to re-imburse Plaintiff the amount of this financial loss incurred of $11,205.

The Cost of medical testing was $250 and the Court is asked to order payment for the unnecessary additional testing and exams which the Plaintiff underwent due to the Defendants unjustifiable actions.

Plaintiff attended numerous further appointments with her treating physician solely to discuss the actions of the Defendants, cost of the further appointments was $550 and the Court is asked to order the Defendants to reimburse this amount. The Plaintiff has had to attend appointments due to the stress and anxiety caused and the figure of these on-going appointments will be provided at trial.

103. Non-Economic loss :

For the Pain and suffering and emotional distress caused by the Defendants wrongful and deliberate actions and malicious attempts to obtain documents it had no legal right to and refusal to process my return to work form and refusal to communicate with me so I could know why the Defendants were acting in such an unlawful manner - a minimum of $500,000 or such greater amount as the Honorable Court considers right and just.

The Defendants actions /inactions, failure to carry out duty of care in performing duties, misrepresentation and defamation and faulty record-keeping and lack of respect for confidentiality and privacy of information caused the Plaintiff to be prejudiced and viewed differently by her employer and as a direct consequence the Plaintiff was not assisted or repositioned into another position and her employment was terminated in December 2017.

For these prejudicial acts and resulting loss the Court is requested to order compensatory payment of a minimum of $500,000 or such greater amount as the Honorable Court considers right and just.

104. Filing and Legal Fees ( as these may arise during the course of litigation). Plaintiff also requests the filing fee of $120 for having to bring this Complaint with no other recourse to obtain the amount due, owing and outstanding, costs of service, and all legal costs Plaintiff may need to incur to bring this Case before the Court and ensure it is correctly presented and argued.

In this respect Plaintiff also requests attorney's fees going forward (to be incurred as the case progresses if Plaintiff finds it necessary to engage attorney's to deal with the matter) and costs/future costs of this suit herein incurred.

105. And such other and further relief as the court may deem just and proper, in particular for the pain and suffering caused so deliberately by the Defendants knowing the Plaintiff's previous medical condition and which caused needless hardship and suffering recklessly and /or maliciously.

**3.** State any other information, of which the Court should be aware:

106. The Plaintiff wrote to each of the Defendants in June 2019 giving Notice of Intention to File Civil Suit in accordance with D.C. Code section 16-2802 which applies to the medical malpractice negligence.
Each of the two Defendants received the Plaintiff's Notice of Intention to File Civil Suit.
Proof of service of each of the Notices of Intention to file Civil Suit will be provided in evidence during discovery or at earlier date if the Honorable Court so determines or requests.

**REQUEST FOR A TRIAL BY JURY**

107. Plaintiff requests a trial by jury.

**SIGNATURE**

To the best of my knowledge, everything in this Complaint is true and I am not filing this complaint to harass the Defendant(s). Superior Court Civil Rules 11 (b).

_____
**SIGNATURE**

February 26. 2020
_____
**DATE**

Subscribed and sworn to before me this _____ day of February 2020.

_____
(Notary Public/Deputy Clerk)

23

## Superior Court of the District of Columbia
### CIVIL DIVISION
### Civil Actions Branch
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
Telephone: (202) 879-1133 Website: www.dccourts.gov

SARA GONZALEZ FLAVELL

_____
Plaintiff

vs.

REED GROUP

Case Number     **2020   01378**

_____
Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

SARA GONZALEZ FLAVELL - PRO SE
_____
Name of Plaintiff's Attorney

1207 ALPS DRIVE
_____
Address

MCLEAN, VIRGINIA , 22102
_____

703 448 0213
_____
Telephone

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시요      የትርጉም እርዳታ ለማግኘት (202) 879-4828 ይደውሉ

*Clerk of the Court*

By _____
Deputy Clerk

Date _____

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]

Super. Ct. Civ. R. 4




**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____ Demandante

contra

_____ Demandado

Número de Caso: _____

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandado. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_____
Nombre del abogado del Demandante

_____
Dirección

_____

_____
Teléfono

*SECRETARIO DEL TRIBUNAL*

Por: _____
Subsecretario

Fecha _____

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202)879-4828로 전화주십시오       የትርጉም እርዳታ ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]

Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

SARA GONZALEZ FLAVELL

_____
                                    Plaintiff
                vs.

REBECca  PATTERSON COLLIER                    Case Number    **2020  01378**
_____
                                    Defendant

## SUMMONS

To the above named Defendant:

        You are hereby summoned and required to serve an Answer to the attached Complaint, either
personally or through an attorney, within twenty one (21) days after service of this summons upon you,
exclusive of the day of service. If you are being sued as an officer or agency of the United States Government
or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your
Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The
attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed
to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue,
N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on
Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on
the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer,
judgment by default may be entered against you for the relief demanded in the complaint.

SARA GONZALEZ FLAVELL - PRO SE                          *Clerk of the Court*
_____
Name of Plaintiff's Attorney
1207 ALPS DRIVE
_____              By _____
Address                                                              Deputy Clerk
MCLEAN, VIRGINIA , 22102
_____
703 448 0213
_____              Date _____
Telephone
如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202)879-4828로 연락주십시요.      የአማርኛ  ትርጉም  ለማግኘት (202) 879-4828  ይደውሉ·

        IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU
ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT
MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE
COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR
REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS
ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

        If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the
Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500
Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                              Super. Ct. Civ. R. 4




**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

_____
Demandante

contra
                                                    Número de Caso: _____

_____
Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_____          *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

                                                    Por: _____
_____                          Subsecretario
Dirección

                                                    Fecha _____
_____
Teléfono

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828로 연락하십시오     ኣስተርጓሚ ትፈልጉ ሲሆኑ፣ በዚህ ስልክ (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                              Super. Ct. Civ. R. 4

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

SARA GONZÁLEZ FINVELL

vs

R. Collier r v. Reed Group

Case Number: **2020 01378**

Date: 26, February 2020

☐ One of the defendants is being sued in their official capacity.

Name: *(Please Print)* SARA GONZÁLEZ FINVELL

Firm Name: —

Telephone No.: 703 448 0213     Six digit Unified Bar No.:

Relationship to Lawsuit
☐ Attorney for Plaintiff
☒ Self (Pro Se)
☐ Other:

TYPE OF CASE: ☐ Non-Jury    ☐ 6 Person Jury    ☒ 12 Person Jury
Demand: $_____    Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED
Case No.:_____    Judge:_____    Calendar #:_____

Case No.:_____    Judge:_____    Calendar#:_____

NATURE OF SUIT:    *(Check One Box Only)*

## A. CONTRACTS

COLLECTION CASES

☐ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 07 Personal Property
☐ 13 Employment Discrimination
☐ 15 Special Education Fees

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 27 Insurance/Subrogation Over $25,000 Pltf. Grants Consent
☐ 07 Insurance/Subrogation Under $25,000 Pltf. Grants Consent
☐ 28 Motion to Confirm Arbitration Award (Collection Cases Only)

☐ 16 Under $25,000 Consent Denied
☐ 18 OVER $25,000 Consent Denied
☐ 26 Insurance/Subrogation Over $25,000 Consent Denied
☐ 34 Insurance/Subrogation Under $25,000 Consent Denied

## B. PROPERTY TORTS

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass

## C. PERSONAL TORTS

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☐ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud

☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☒ 16 Negligence- (Not Automobile, Not Malpractice)

☐ 17 Personal Injury- (Not Automobile, Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE    IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  - (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment
- ☐ 17 Merit Personnel Act (OEA)
  - (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability
- ☐ 24 Application to Confirm, Modify,
  - Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  - Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)
- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  - Judgment [ D.C. Code §
  - 2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  - 42-3301, et seq.)
- ☐ 21 Petition for Subpoena
  - [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  - (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

**D. REAL PROPERTY**

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)
- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

_____
Attorney Signature

26. February . 2020.
_____
Date

CV-496/ June 2015